**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| AMERICAN WOOD CONCEPTS, LLC, | ) | Case No. 08-50791 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| STATE AUTO PROPERTY AND | ) | |
| CASUALTY CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 09-5011 |
| | ) | |
| BRUCE E. STRAUSS, Chapter 7 Trustee, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

On June 16, 2009, Plaintiff State Auto Property and Casualty Co. ("State Auto") filed a complaint seeking a declaratory judgment that it has no liability on an insurance claim filed by the Debtor, American Wood Concepts, LLC, for losses arising from a fire on its business premises on April 3, 2008.  State Auto now seeks summary judgment on grounds that the Debtor failed and refused to cooperate with State Auto in its investigation of the fire and that this lack of cooperation violates the insurance policy covering the premises and relieves State Auto of its liability.  The Chapter 7 trustee is the defendant in this action because the fire-loss claim became property of the bankruptcy estate upon the Debtor's bankruptcy filing.

For the reasons stated below, the Court will grant State Auto's motion for summary judgment.

**STANDARD OF REVIEW**

Summary judgment is appropriate when the pleadings, discovery, and any affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as

a matter of law.[1]  In a motion for summary judgment, the moving party has the initial burden of demonstrating the absence of genuine issues of material fact.[2]  Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings; self-serving allegations or mere assertions of disputed fact are insufficient to defeat the motion.[3]

## UNCONTROVERTED FACTS [4]

1.    State Auto issued a commercial insurance policy, policy number SPP 2 336 774 ("Policy"), to the Debtor, American Wood Concepts, LLC ("AWC"), effective June 17, 2007 to June 17, 2008.

2.    On April 3, 2008, a fire occurred at AWC's business located at 3901 NE 33rd Terrace, Kansas City, Missouri.  AWC was owned by Jerry Spring (95%) and Scott McCoy (5%).

3.    The Kansas City, Missouri Police Department reported, and State Auto's origin and cause investigator opined, that the fire was the result of arson.[5]

4.    The Kansas City, Missouri Police Department reported, and State Auto's origin and cause investigator opined, that the location of the origin of the fire was an up-cut saw located within the building.

5.    On the day of the fire, McCoy examined and allegedly attempted to fix the up-cut saw.

---

[1] Fed. R. Bankr. P. 7056.

[2] *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1983).

[3] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bass v. SBC Communications, Inc.*, 418 F.3d 870, 872-73 (8th Cir. 2005).

[4] The Trustee has requested that the Court strike facts 3-8 on the basis that they are "irrelevant and immaterial" to the central issue of whether the Debtor failed to cooperate in State Auto's investigation of the Debtor's claim.  Although the Trustee is free to argue that certain facts are not germane to the issues at bar, there is no basis to "strike" the facts from the pleading.  Moreover, the Court disagrees that facts 3-8 are irrelevant.  As discussed below, an insured's failure to cooperate relieves an insurer of liability under a policy if that failure causes substantial prejudice to the insurer.  Facts 3-8 strongly suggest that, at the very least, McCoy had knowledge of facts relevant to State Auto's investigation of the fire.  Therefore, facts 3-8 are relevant to the central issue presented by State Auto's motion for summary judgment.

[5] The Trustee objected to the admission of the police reports on the basis of hearsay.  Police reports, however, are admissible under the public records exception to hearsay and appropriately offered in support of State Auto's motion for summary judgment.  *See Gaddy v. Hartford Life Insurance Co.*, 218 F.Supp. 1123, 1126 (E.D. Mo. 2002) (applying Fed. R. Evid. 803(8)(C) to police report).

6.      The Kansas City, Missouri Police Department reported that there were no signs of forced entry.

7.      On the day of the fire, the building's sprinkler system and fire alarm system had been turned off.

8.      On May 20, 2008, AWC submitted a "Sworn Statement in Proof of Loss" to State Auto, making a formal demand for payment under the Policy for $557,578.00 for damage to personal property and lost business income in connection with the fire.

9.      The following provisions of the Policy are relevant to State Auto's motion for summary judgment:

Under Common Policy Conditions:

   C.      EXAMINATION OF YOUR BOOKS AND RECORDS
   We may examine and audit your books and records as they relate to this
   policy at any time during the policy period and up to three years afterward.

In the Building and Personal Property Coverage Form:

   E.      Loss Conditions

                  *         *         *
      3. Duties In The Event Of Loss Or Damage

            a. You must see that the following are done in the event of
            loss or damage to Covered Property
                        *         *         *
                  (6) As often as may be reasonably required, permit
                  us to inspect the property proving the loss or
                  damage and examine your books and records.  Also
                  permit us to take samples of damaged and
                  undamaged property for inspection, testing and
                  analysis, and permit us to make copies from your
                  books and records.

                        *         *         *
                  (8) Cooperate with us in the investigation or
                  settlement of the claim.

            b. We may examine any insured under oath, while not in
            the presence of any other insured and at such times as may

3

> be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

In the Section II of the Commercial General Liability Form, under the heading "WHO IS AN INSURED":

1.    If you are designated in the Declarations as:

*       *       *

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

10.    On June 25, 2008, State Auto sent a correspondence to AWC indicating its intention to take an examination under oath ("EUO") of McCoy as part of its investigation.

11.    On July 17, 2008, Meaden & Moore, accountants hired by State Auto to investigate AWC's business income loss claim, requested McCoy directly to produce documents in compliance with the insurance policy.

12.    On July 22, 2008, State Auto sent a correspondence directly to McCoy requesting him to produce documents and to appear for an EUO.

13.    On August 11, 2008, both State Auto and Meaden & Moore sent a correspondence to AWC's attorney, Colin Gotham, enclosing the document requests previously sent to McCoy and again requesting that McCoy appear for an EUO.

14.    After obtaining an updated address for McCoy, on August 22, 2008, State Auto sent a correspondence to McCoy requesting that he produce documents and submit to an EUO.

15.    On September 11, 2008, State Auto requested that AWC produce McCoy for an EUO.

16.    On September 19, 2008, State Auto requested that AWC produce McCoy for an EUO and that McCoy produce documents before his EUO.

17.    On September 29, 2008, Brown & James, P.C., received a correspondence from McCoy indicating that he would comply with any requests in a timely fashion.

18.    On October 1, 2008, State Auto requested that AWC produce McCoy for an EUO.

19.    On October 14, 2008, State Auto requested that AWC produce McCoy for an EUO.

20.     On October 20, 2008, AWC filed for protection under Chapter 7 of the Bankruptcy Code. Bruce E. Strauss was appointed as the Chapter 7 trustee ("Trustee") of AWC's bankruptcy estate.

21.     On October 22, 2008, State Auto requested that AWC produce McCoy for an EUO.

22.     On October 31, 2008, State Auto requested that AWC and the Trustee produce McCoy for an EUO.

23.     On November 3, 2008, State Auto offered to travel to the State of Washington to secure McCoy's EUO and requested available dates. State Auto also requested that McCoy produce certain documents.

24.     On November 6, 2008, State Auto requested that AWC and Strauss produce McCoy for an EUO and produce certain documents.

25.     On December 3, 2008, State Auto requested that AWC and Strauss produce McCoy for an EUO, and stated that if a date was not received, State Auto would begin unilaterally setting a date for the EUO.

26.     On or about December 5, 2008, McCoy agreed to submit to an EUO on December 22, 2008.

27.     On December 9, 2008, State Auto received a correspondence from AWC's counsel indicating that McCoy had retained his own counsel and that the EUO scheduled for December 22, 2008 would need to be cancelled.

28.     On December 15, 2008, State Auto sent a letter to McCoy's attorney reminding him that McCoy's EUO was scheduled for December 22, 2008. State Auto was subsequently informed that McCoy's attorney intended to cancel the December 22, 2008 EUO.

29.     On December 29, 2008, State Auto requested that McCoy's personal attorney provide available dates for McCoy's EUO.

30.     On February 4, 2009, State Auto requested that McCoy submit to an EUO.

31.     On March 10, 2009 requested that McCoy submit to an EUO.

32.     Receiving no response from McCoy, on March 19, 2009, State Auto unilaterally scheduled McCoy's EUO for April 3, 2009, and requested that McCoy produce certain documents at least five days beforehand.

33.     On April 3, 2009, McCoy failed to appear for his EUO and failed to produce documents in support of AWC's claim.

34.     In sum, McCoy has never provided an EUO to State Auto.

## DISCUSSION

Despite the amount of time, money, and ink invested in litigating this motion for summary judgment, the resolution of the motion is straightforward and uncomplicated.

An insurer may deny liability under an insurance policy if it can prove that an insured has materially breached a cooperation clause.[6]  To establish a material breach of a cooperation clause, the insurer must prove: (1) that the insured had a duty to cooperate, (2) that the insurer exercised reasonable diligence to secure the insured's cooperation, and (3) that the insured's failure to cooperate "substantially prejudiced" the insurer.[7]

The uncontroverted facts establish all of these elements.

First, the terms of the Policy are unambiguous.  State Auto had the right to obtain, and McCoy had the obligation to submit to, an examination under oath.  Under the terms of the Policy, State Auto has the right to examine "any insured" under oath about any matter relating to the Policy and any claim made thereunder.  Members of limited liability companies are "insureds" under the Policy.  The Debtor is a limited liability company, and McCoy is a member.  Therefore, McCoy is an "insured" whom State Auto has the right to examine under oath about AWC's fire-loss claim.

The Trustee's argument that McCoy did not have to submit to an examination under oath because he had only a 5% stake in AWC, whereas Jerry Spring, who owned 95% of the Debtor, did submit to an examination under oath is without merit.  The Policy states unambiguously that "members" of limited liability companies are insureds.  There is no qualification limiting "members" to majority members or excluding minority members, and there is no legal or factual basis to impose such a qualification.

Second, the Court finds that State Auto exercised reasonable diligence in attempting to secure McCoy's cooperation, *i.e.*, his examination under oath.  State Auto made no less than fifteen attempts to arrange for McCoy's EUO.  Reasonable diligence has been found where an insurance

---

[6] *See Union Insurance Co. of Providence v. Williams*, 261 F.Supp.2d 1150, 1153 (E.D. Mo. 2003); *Wiles v. Capitol Indemnity Corp.*, 215 F.Supp.2d 1029, 1031 (E.D. Mo. 2001).

[7] *Id.*

6

company made only two attempts.[8]  Thus, State Auto's diligence far exceeded what was required to meet the reasonable threshold.

Third, McCoy's failure to submit to an EUO substantially prejudiced State Auto – as a matter of law[9] and as a matter of the overwhelming evidence.  The uncontroverted facts show that McCoy was the insured with perhaps the greatest knowledge of the circumstances surrounding the fire. Most notably, the origin of the fire was an up-cut saw located within the building, and on the day of the fire, McCoy examined and allegedly attempted to fix the up-cut saw.  The Court need not draw any conclusions about McCoy's direct involvement with the fire to find that, at the very least, McCoy had knowledge that would have been helpful in State Auto's investigation.  Thus, McCoy's failure to permit State Auto an opportunity to question him about the circumstances surrounding the fire was clearly and substantially prejudicial.

Finally, the Court rejects the Trustee's contentions that State Auto was not prejudiced because McCoy provided a recorded statement shortly after the fire-loss claim or because he is now available for a deposition.  Neither argument has merit.

"The giving of recorded statements or the taking of depositions with both sides present does not constitute substantial compliance with [the insured's obligation to submit to an examination under oath]."[10]  The initial interview was not conducted under oath as required by the Policy.  And the Policy provides that State Auto may conduct an examination under oath "at such times as may be reasonably required."[11]  In other words, State Auto was entitled to examine McCoy on multiple occasions if it deemed further examinations necessary.  Moreover, as a practical matter, it is likely that McCoy's recorded statement was of limited value to State Auto at the time it was given because State Auto had just begun its investigation of the fire.

---

[8] *Id.* (finding that insurer had exercised reasonable diligence after only two attempts at securing the insured's EUO).

[9] *Union Insurance Co.*, 261 F.Supp.2d at 1153.  *See also Wiles*, 215 F.Supp at 1032 (finding that insurer suffered substantial prejudice as a matter of law where insured filed suit before submitting to an examination under oath).

[10] *Southgate Gardens Condo Assoc., Inc. v. Aspen Specialty Ins. Co.*, 622 F.Supp.2d 1332, 1334 (S.D. Fla. 2008).  *See also Union Insurance Co.*, 261 F.Supp.2d at 1153 (finding that tape-recorded statement did not satisfy insured's obligation to submit to examination under oath).

[11] Emphasis added.

With regard to McCoy's supposed willingness to now submit to a deposition, more than two years after the fire occurred, a deposition does not satisfy McCoy's obligation under the Policy to submit to an examination under oath – legally or equitably. "The right to examine under the cooperation clause of [an] insurance policy . . . is much broader than the right of discovery . . . . By its terms, the insured promises to render full and prompt assistance to discover the facts surrounding the loss and anything less results in a breach of contract."[12] It should not have been necessary for State Auto to bear the expense of filing a lawsuit to enforce its right to examine McCoy's under oath.[13] Thus, McCoy substantially prejudiced State Auto by depriving it of its right to timely examine him under oath.

## CONCLUSION

For the reasons stated above, the Court finds that the Debtor has materially breached its duty to cooperate under its insurance policy with State Auto. Therefore, State Auto is relieved of liability under the Policy for any claims made in connection with the fire on the Debtor's business premises on April 3, 2008. This holding effectively moots the Trustee's counterclaim for turnover of the policy proceeds; therefore, in addition to granting State Auto the relief it seeks in its complaint for declaratory judgment, judgment will be entered against the Trustee on his counterclaim.

A separate judgment consistent with this Memorandum Opinion will be entered pursuant to Fed. R. Bank. P. 9021.

**ENTERED** this 20th day of April 2010.


/s/ Jerry W. Venters

---

[12] *Id.*

[13] *See Dyno-Bite, Inc. V. Travelers Co.*, 80 A.D.2d 471, 473 (N.Y. 1981) (finding breach of cooperation clause where some, but not all, of insured's principals provided examinations under oath).

HONORABLE JERRY W. VENTERS
UNITED STATES BANKRUPTCY JUDGE

A copy of the foregoing was mailed
conventionally or electronically to:
Bruce E. Strauss
Corey L. Kraushaar